IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GENENTECH, INC. and CITY OF HOPE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 17-1407-GMS |
| | ) | Civ. No. 17-1471-GMS |
| AMGEN INC. | ) | |
| | ) | |
| Defendant, | ) | |

Michael P. Kelly, Esquire and Daniel M. Silver, Esquire of McCarter & English, LLP, Wilmington, Delaware. Counsel for Plaintiffs Genentech, Inc. and City of Hope. Of Counsel for Plaintiff Genentech, Inc.: Paul B. Gaffney, Esquire, David I. Berl, Esquire, Thomas S. Fletcher, Esquire, Teagan J. Gregory, Esquire, and Jonathan S. Sidhu, Esquire of Williams & Connolly LLP, Washington, D.C.

Melanie K. Sharp, Esquire and James L. Higgins, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendant Amgen Inc. Of Counsel: Siegmund Y. Gutman, Esquire of Proskauer Rose LLP, Los Angeles, California and Steven M. Bauer, Esquire of Proskauer Rose LLP, Boston, Massachusetts.

**MEMORANDUM OPINION**

Dated: January 1̲2̲, 2018
Wilmington, Delaware


SLEET, District Judge

## I. INTRODUCTION

Plaintiffs Genentech, Inc. and City of Hope (collectively, "Plaintiffs") have filed two patent infringement actions in this court against defendant Amgen Inc. ("Amgen") based on Amgen's plans to commercialize Mvasi®, a biosimilar version of Genentech's anticancer medicine Avastin®. Pursuant to 28 U.S.C. § 1404(a), Amgen has moved to transfer these actions to the Central District of California, where its declaratory judgment action regarding the same controversy is pending. (Civ. No. 17-1407 at D.I. 11; Civ. No. 17-1471 at D.I. 13).[1] The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons stated below, the motion is denied.

## II. BACKGROUND

Genentech asserts that Amgen's Mvasi® infringes on 20 patents it owns exclusively, 2 patents it co-owns with City of Hope, and 2 patents it licenses exclusively with the sole right to enforce. (D.I. 2 ¶¶ 30-31). Genentech is a Delaware corporation with its principal place of business in San Francisco, California. (*Id.* at ¶ 19-21). City of Hope is a California nonprofit organization with its principal place of business in Duarte, California. (*Id.*). Amgen is a Delaware corporation with its principal place of business in Thousand Oaks, California. (*Id.*).

Altogether, Plaintiffs have filed three lawsuits in this court over Amgen's plans to commercialize Mvasi®. In the first lawsuit, filed in February 2017, Plaintiffs sought a declaratory judgment that Amgen violated Section 262(*l*)(2)(A) of the Biologics Price Competition and

---

[1] Because the parties make essentially identical arguments in each case, all cites hereinafter are to the docket for Civ. No. 17-1407 unless stated otherwise.

1

Innovation Act ("BPCIA") by producing only its Abbreviated Biologic License Application ("aBLA") and no other information that described "the process or processes used to manufacture the biological product that is the subject of such application." (Civ. No. 17-165, D.I. 24 at 1-2 (quoting 42 U.S.C. § 262(*l*)(2)(A)). The BPCIA sets forth a "carefully calibrated scheme" requiring the "reference product sponsor" (i.e., Plaintiffs) and the "applicant" (i.e., Amgen) to disclose and exchange information in furtherance of "preparing to adjudicate, and then adjudicating, claims of infringement." *Sandoz, Inc. v. Amgen, Inc.*, 137 S. Ct. 1664, 1670 (2017). Thus, Plaintiffs alleged that Amgen was not complying with the steps in the BPCIA's scheme, colloquially referred to as the "patent dance." (D.I. 24 at 1). Under the BPCIA, the patent dance ends with the reference product sponsor, not the applicant, bringing claims as part of an "immediate patent infringement action." 42 U.S.C. § 262(*l*)(6).

Amgen moved to dismiss Plaintiffs' declaratory judgment action as procedurally improper in light of *Amgen Inc. v. Sandoz Inc.*, 794 F.3d 1347 (Fed. Cir. 2015). (Civ. No. 17-165 at D.I. 11). In *Sandoz*, the Federal Circuit held that any alleged non-compliance with Section 262(*l*)(2)(A) should be addressed as part of the "immediate patent infringement action" contemplated by the BPCIA or by a declaratory judgment action pursuant to 42 U.S.C. § 262(*l*)(9)(C).[2] 794 F.3d at 1357. The court agreed with Amgen and dismissed the case. (Civ. No. 17-165 at D.I. 16).

Thereafter, the parties continued the patent dance. (D.I. 24 at 2). Plaintiffs identified 27 patents they reasonably believed could be asserted against Amgen, exchanged contentions with Amgen regarding those patents, and then met with Amgen, sometime in September 2017, to

---

[2] Section 262(*l*)(9)(C) allows the reference product sponsor to bring an action "for a declaration of infringement, validity, or enforceability of any patent that claims the biological product or a use of the biological product." 42 U.S.C. § 262(l)(9)(C)

2

conduct "good faith negotiations" over which of the 27 patents to include in their "immediate patent infringement action." (*Id.* at 2-3). Plaintiffs proposed including all of the listed patents save two. (*Id.*).

Section 262(*l*)(5) of the BPCIA expects the applicant to either agree or disagree with the reference product sponsor's proposed list of patents before the reference product sponsor files its "immediate patent infringement action." 42 U.S.C. § 262(*l*)(5). Amgen did not respond to Plaintiffs' proposal. (D.I. 24 at 2-3). Instead, on October 6, 2017, Amgen filed a declaratory judgment action in the Central District of California asserting claims of non-infringement, invalidity, and unenforceability that essentially mirrored the claims Plaintiffs had proposed. (*Id.* at 2). Plaintiffs responded by filing their complaint in Civ. No. 17-1407 a few hours later. (*Id.*). That same day, after filing the declaratory judgment action, Amgen told Plaintiffs that their "immediate patent infringement action" should include all of the listed patents. (*Id.* at 3). According to Plaintiffs, this communication satisfied Amgen's obligations under Section 262(*l*)(5) and triggered Plaintiffs' thirty-day deadline to file their "immediate patent infringement action." (*Id.* (citing 42 U.S.C. § 262(*l*)(6)). Plaintiffs filed their complaint in Civ. No. 17-1471 twelve days later.

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis," whether or not "to transfer any civil action to any other district or division where it might have been brought." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The burden of establishing the need for transfer rests with the movant. *Id.* at 879.

3

## IV. DISCUSSION

Amgen makes two arguments in support of its motions to transfer. First, the *Jumara* factors that traditionally guide the court's analysis on a motion to transfer weigh heavily in its favor. (D.I. 11 at 2 (citing *Jumara*, 55 F.3d at 879-80)). Second, transfer is warranted under the first-to-file rule. (*Id.* at 5). Each of these arguments will be addressed in turn.

### A. The *Jumara* Factors.

In deciding a motion to transfer, the court traditionally employs a two-step inquiry. First, the court must determine whether the action could have been brought in the proposed transferee district. *Endeavor MeshTech, Inc. v. Aclara Tech. LLC*, 2015 WL 849211, at *1 (D. Del. Feb. 25, 2015). If yes, then second, the court considers whether transfer would "best serve the interests of justice and convenience." *Id.* (quoting *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012)). The parties do not dispute that Plaintiffs' actions could have been brought in the Central District of California. Thus, the court will focus on the second step, whether transfer best serves the interests of justice and convenience. The analysis under the second step is guided by the private and public interest factors identified by the Third Circuit in *Jumara*.

#### 1. The Private Interest Factors

The private interest factors are: (1) plaintiff's choice of forum, (2) defendant's choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the location of books and records. *Jumara*, 55 F.3d at 879. Each of these factors will be discussed in more detail below.

##### a. Plaintiffs' Choice of Forum

"Generally, a plaintiff's choice of forum is entitled to 'paramount consideration,' and should not lightly be disturbed." *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356–57

4

(D. Del. 2009) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). Amgen argues that Plaintiffs' choice of forum is due little weight because Delaware is not their "home turf." (D.I. 11 at 6). For several reasons, the court disagrees.

First, other judges in this District have carefully analyzed the history and development of the so-called "home-turf rule" and concluded that it "has no independent significance as to the overall *Jumara* balance of convenience analysis, nor to the analysis regarding this first *Jumara* private interest factor." *Elm 3DS Innovations LLC v. SK Hynix Inc.*, 2015 WL 4967139, at *4 n. 6 (D. Del. Aug. 20, 2015). "[T]he original discussion of a 'home turf rule' in prior cases from this District simply articulated the commonsense proposition that the weaker the connection between the forum and the plaintiff (or the lawsuit), the easier it will be for the defendant to show that the balance of convenience tips in its favor." *Tessera, Inc. v. Broadcom Corp.*, 2017 WL 1065865, at *4 n. 6 (D. Del. Mar. 21, 2017). The rule "was never meant to apply so as to automatically lessen the weight afforded to the first *Jumara* private interest factor (if this District is not a plaintiff's 'home turf'), or to automatically increase the weight given to the factor (if this District is the plaintiff's 'home turf')." *Id.*

Second, there is a line of cases from this District that construe a plaintiff's "home turf" to include its state of incorporation, which for Genentech is Delaware. *See, e.g., Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012); *In re Mobile Telecomm. Tech., LLC*, 243 F. Supp. 3d 478, 485–86 (D. Del. 2017). Finally, even in cases where Delaware is not considered a plaintiff's "home turf," a plaintiff's choice of forum is still accorded "substantial weight" if that choice relates to the plaintiff's "legitimate, rational concerns." *Waste Distillation*

5

*Tech., Inc. v. Pan Am. Resources, Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991). Our court[3] has repeatedly found that it is rational and legitimate for a plaintiff to sue in the defendant's state of incorporation, which for Amgen is Delaware. *Elm 3DS*, 2015 WL 4967139, at *4. Considering the foregoing, the court finds no reason to discount Plaintiffs' choice of forum. This factor weighs against transfer.

b.  **Defendant's Choice of Forum.**

When a defendant prefers to litigate in "the District where it operates its principal place of business and headquarters," as Amgen does, "[t]his factor weighs in favor of transfer." *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, 2017 WL 1536394, at *4 (D. Del. Apr. 27, 2017). Nevertheless, a defendant's preferred venue "is not sufficient to displace the plaintiff's own choice of venue." *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009); *see also Intellectual Ventures*, 842 F. Supp. 2d at 755 (stating that a defendants' choice of forum is "not given the same weight" as a plaintiff's choice of forum). Accordingly, this factor weighs in favor of transfer, but not as strongly as Plaintiffs' choice of forum weighs against transfer.

c.  **Where the Claims Arose**

"[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)). Therefore, when the defendant operates on a national or

---

[3] This court has been consistently heard over time to repeat the well-known precept that "[t]here is no such thing as 'the law of the district.'" *Zebroski v. Pierce*, 2016 WL 697614, at *6 (D. Del. Feb. 22, 2016) (quoting *Threadgill v. Armstrong World Indus. Inc.*, 928 F.2d 1366, 1371 (3d Cir.1991)). This ruling does not signal a change of view.

6

global scale, as Amgen does, this factor is neutral. *Smart Audio*, 910 F. Supp. 2d at 730–31. At the same time, however, there is a line of cases stating that infringement claims have "deeper roots" in the forum where the accused products are developed, designed, and manufactured. *See, e.g., Linex Tech., Inc. v. Hewlett–Packard Co.*, 2013 WL 105323 (D. Del. Jan. 7, 2013); *Smart Audio*, 910 F. Supp. 2d at 730. Here, the development and design of Amgen's Mvasi® primarily occurred in Thousand Oaks, California, but the manufacture occurred throughout the United States. (D.I. 24 at 7). Accordingly, this factor weighs only slightly in favor of transfer.

### d. Convenience of the Parties

The court traditionally weighs the convenience of the parties by considering the parties' physical location and relative ability to bear litigation-related travel costs. *Fuisz Pharma LLC v. Theranos, Inc.*, 2012 WL 1820642, at *12 (D. Del. May 18, 2012). Here, all of the parties are physically located in California, and two of the parties are located in the Central District of California. Nevertheless, Amgen is a "large, well-funded research organization[]." (D.I. 11 at 8; *see also* D.I. 24 at 9 (Amgen is "the largest biotechnology company in the world")). When the defendant "is a corporation with global reach and annual revenues in the billions," it is reasonable to conclude that "litigating in Delaware will not impose an undue financial burden." *Bristol–Myers Squibb Co. v. Merck & Co.*, 2014 WL 12531129, at *1 n. 1 (D. Del. Apr. 29, 2014). In addition, Amgen's allegations of inconvenience are contradicted by the fact that it voluntarily chose to incorporate in Delaware. "[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA–Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). Weighing all of these facts together, the court finds that this factor is neutral.

7

e. **Convenience of the Witnesses**

The "convenience of the witnesses" factor carries weight only to the extent that "a witness actually will refuse to testify absent a subpoena." *Smart Audio*, 910 F. Supp. 2d at 732; *see also Jumara*, 55 F.3d at 879 (requiring the witnesses to be unavailable for trial in one of the fora). In addition, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).

This early in the proceedings, it is difficult to know with any certainty who will be called as a witnesses at trial. Amgen submitted a list of last known locations for the 103 inventors identified on the patents-at-issue. (D.I. 29-1, Ex. I). After careful consideration, the court finds that the list does not provide great weight in favor of transfer. The current location of 5 of the inventors is unknown; 24 of the inventors reside in neither California nor Delaware and are, therefore, outside the subpoena power of either district; and 37 of the inventors are still employed by either Genentech or City of Hope. This leaves 37 potential non-party witnesses. Thirty of those potential non-party witnesses are located within California, but more than 100 miles from the Central District of California and, therefore, cannot be compelled to attend trial if, as a result, they would "incur 'substantial expense.'" Fed. R. Civ. P. 45 Advisory Committee Notes to 2013 Amendment. Thus, there are only 7 inventors, out of 103 total, that are clearly within the subpoena power of Central District of California, but not the subpoena power of this court. In addition, Amgen claims that "[t]he vast majority of scientists and other individuals involved with and knowledgeable about Amgen's development of [Mvasi®] ... work at the company's headquarters in Thousand Oaks, [California]," suggesting that several likely trial witnesses are Amgen

8

employees whose presence it is expected to procure. (D.I. 13 ¶ 10). In light of the above, this factor weighs only slightly in favor of transfer.

### f. Location of Books and Records

The location of books and records is relevant "only to the degree that [the] books and records cannot be produced in Delaware." *Cornerstone Therapeutics Inc. v. Exela Pharma Sciences, LLC*, 2014 WL 12597625, at *2 (D. Del. June 16, 2014). The bulk of the relevant documents are most likely located in California, where Amgen, as the accused infringer, is headquartered. Amgen, however, has not articulated any reason why those books and records cannot be produced in Delaware. Our court has repeatedly recognized that "virtually all businesses maintain their books and records in electronic format readily available for review and use at any location." *C. R. Bard, Inc. v. Angiodynamics, Inc.*, 156 F. Supp. 3d 540, 546 (D. Del. 2016). Accordingly, this factor weighs against transfer.[4] *See Cornerstone*, 2014 WL 12597625, at *2 (finding that the books and records factor weighed against transfer where the defendant "has not explained why these documents could not be transmitted electronically or otherwise made available in Delaware").

---

[4] The court recognizes that, in *Genentech*, a Texas district court considered the books and record factor neutral, given the advances in electronic storage and transmission, and was reversed by the Federal Circuit. *See Genentech*, 566 F.3d at 1345-46. *Genentech*, however, is a Federal Circuit opinion interpreting Fifth Circuit transfer law and, therefore, is not binding on this court. *Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, 2012 WL 2068728, at *8 (S.D. Cal. June 8, 2012); *see also Intellectual Ventures*, 842 F. Supp. 2d at 761 (explaining that the Federal Circuit reviews motions to transfers "under the law of the relevant regional circuit" and noting that transfer law under the Third Circuit differs from the Fifth Circuit in "significant respects").

## 2. The Public Interest Factors

The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) and the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80. Amgen addressed only two of the six factors: practical considerations and court congestion. (D.I. 11). Accordingly, the court will weigh only those two factors and consider the remaining, unaddressed factors neutral.

### a. Practical Considerations

Amgen argues, in a throwaway sentence, that transfer is warranted, because Plaintiffs are "familiar" with the Central District of California after participating in over ten different actions there involving some of the same patents asserted here. (D.I. 11 at 9-10). Section 1404(a) requires "individualized, case-by-case consideration of convenience and fairness." *Genentech*, 566 F.3d at 1346 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Thus, unrelated cases have no weight in the transfer analysis. *See Id.* (finding clear error where district court relied on defendant's prior unrelated lawsuits in the transfer analysis); *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015) (finding "unrelated cases ... irrelevant to the transfer analysis"). At the same time, our courts have recognized that efficiencies can be gained when all related cases are litigated together. *Micro Design LLC v. Asus Computer Int'l*, 2015 WL 2089770, at *10 (D. Del. May 1, 2015). Accordingly, transfer is generally appropriate "where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art." *Mallinckrodt*, 670 F. Supp. 2d at 357-58.

Amgen did not identify any similarities between this litigation and the ten actions it referenced. Because it is Amgen's burden to show that transfer is warranted, the court finds it difficult to give this throwaway argument any weight. Nevertheless, in attempting to refute Amgen's assertion, Plaintiffs provided the details Amgen did not. (*See* D.I. 24 at 12-14). It appears that Judge Pfaelzer and Judge Wu of the Central District of California have presided over litigation involving two of the same patents-at-issue here. (*Id.* at 13). None of those ten actions, however, involved Amgen or its accused product, Mvasi®. (*Id.* at 12-13). In addition, Judge Pfaelzer has, regrettably, since passed away and the single case overseen by Judge Wu was resolved before entry of a final claim construction order or any other substantive order. (*Id.*). Under those circumstances, it is difficult to determine if Judge Wu gained any more familiarity with the parties and patents-at-issue than this court did when it presided over Plaintiffs' earlier declaratory judgment action against Amgen. It is likely that both courts are in a similar position, because "a trial judge may develop a familiarity or expertise over a given patented technology over time," but "this benefit is realized only after the cases have progressed past the preliminary stages." *Endeavor*, 2015 WL 849211, at *5. Considering all of the above, the court finds that Amgen has not carried its burden of demonstrating that the existence of ten prior actions in the Central District of California involving only a few of the patents-at-issue here, and not involving Amgen, is a practical consideration weighing in favor of transfer.

Next, Amgen argues that transfer is warranted, because the California action includes a few additional patents not asserted here. (*See* D.I. 11 at 9 (stating that the California action includes 3 additional patents); Civ. No. 17-1471, D.I. 13 at 10 (stating that the California action includes 2 additional patents)). The court is not convinced that the presence of a few additional patents in the California action is a practical consideration that weighs in favor of transfer.

11

Plaintiffs previously took the position that "under the BPCIA, if Genentech fails to list a patent, it could be barred permanently from asserting that patent against Amgen's biosimilar [Mvasi®]."[5] (Civ. No. 17-165, D.I. 1 at 2). Because Plaintiffs have filed their immediate patent infringement action without including those additional patents, it appears that those missing patents cannot lead to an actual controversy. As a result, there is doubt that the missing patents could be subject to a declaratory judgment action, as Amgen seeks in California. "For a court properly to exercise declaratory judgment jurisdiction, there must exist 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2017 WL 2559735, at *1 (D. Del. June 13, 2017) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In summary, the court finds this factor to be neutral.

b. **Court Congestion**

Amgen presented statistics regarding the percentage increase in caseload for each district, the median time to disposition of civil cases, and the percentage of pending civil cases over three years old. (D.I. 11 at 10). Plaintiffs presented statistics showing that the time-to-trial for patent cases is shorter in the District of Delaware than in the Central District of California. (D.I. 25-1, Ex. 6 at 22). In addition, on a per-judgeship basis, the Central District of California has had, in recent years, more total actions, more civil actions, and more weighted filings than the District of

---

[5] Plaintiffs' assertion was based on 35 U.S.C. § 271(e)(6)(C) which states: "The owner of a patent that should have been included in the list described in section 351(l)(3)(A) of the Public Health Service Act, including as provided under section 351(l)(7) of such Act for a biological product, but was not timely included in such list, may not bring an action under this section for infringement of the patent with respect to the biological product." (*See* Civ. No. 17-165, D.I. 1 at ¶ 5).

12

Delaware. (*Id.*, Ex. 8). The court finds Plaintiffs' statistics to be a more illuminating measure of court congestion. Amgen appears to agree, because it abandoned any argument regarding court congestion in its reply brief. (See D.I. 28). Accordingly, this factor weighs against transfer.

### 3. Weighing the *Jumara* Factors Together

In summary, Amgen's choice of forum weighs in favor of transfer, but not as strongly as Plaintiffs' choice of forum weighs against transfer. Only two other factors weigh in favor of transfer, but only slightly: where the claims arose and the convenience of the witnesses. The remaining factors were neutral or weighed against transfer. "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp.*, 138 F. Supp. 2d at 567–68; *see also Intellectual Ventures*, 842 F. Supp. 2d at 750–51 ("[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." (quoting *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010))). Because the *Jumara* factors do not weigh strongly in favor of transfer, Amgen has not carried its burden of demonstrating that transfer is warranted under those factors.

### B. The First-to-File Rule

Amgen argues that the motion to transfer should be granted under the first-to-file rule, because the California action was first-filed and involves the same controversy. (D.I. 11 at 5). In patent cases, "a later-filed action involving the same controversy should be dismissed, transferred, or stayed in favor of the first-filed action," *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 403 (D. Del. 2013), "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937

13

(Fed. Cir. 1993), *rev'd on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).[6] Plaintiffs raise several arguments as to why the first-to-file rule should not apply here, the most salient being that the California action was anticipatory. (D.I. 24 at 15-20). "[A] suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Woodbolt Distrib., LLC v. Natural Alts. Int'l, Inc.*, 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013).

At the time Amgen filed its California action, it had already been sued by Plaintiffs in this court based on an alleged failure to make disclosures about Mvasi® required by the BPCIA. (Civ. No. 17-165, D.I. 24 at 1-2). Those disclosures were a step in the patent dance Plaintiffs had to follow in order to bring any patent infringement action against Mvasi®. The court dismissed that lawsuit as essentially premature, because any claims regarding Amgen's compliance with the patent dance needed to be brought as part of Plaintiffs' "immediate patent infringement action." (*Id.* at D.I. 16). Amgen has not pointed to any facts suggesting that Plaintiffs abandoned their interest in pursuing an immediate patent infringement action against Mvasi® after their lawsuit was dismissed. In fact, Plaintiffs continued to participate in the patent dance, and were waiting for a response from Amgen, when Amgen filed its California action. (D.I. 24 at 2-3). Thus, the court finds that the California action was anticipatory.

An anticipatory lawsuit does not lose its priority under the first-to-file rule, unless there are additional convenience factors that do not favor a transfer. *Mitek Sys., Inc. v. United Serv. Auto.*

---

[6] Application of the first-filed rule in patent cases is governed by Federal Circuit law. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345–46 (Fed. Cir. 2005); *Abbott Labs. v. Roxane Labs., Inc.*, 2013 WL 2322770, at *14 n.13 (D. Del. May 28, 2013).

14

*Ass'n*, 2012 WL 3777423, at *3 (D. Del. Aug. 30, 2012). Having already found above that the *Jumara* factors weigh against transfer, the court concludes that there are convenience factors, in addition to the anticipatory nature of the California action, that weigh against giving the California action priority status. Accordingly, the court will not apply the first-to-file rule in favor of transfer.

## V. CONCLUSION

For the foregoing reasons, Amgen's motions to transfer (Civ. No. 17-1407 at D.I. 11; Civ. No. 17-1471 at D.I. 13) are denied. An appropriate order will be entered.