IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GENENTECH, INC. and CITY OF HOPE,<br><br>*Plaintiffs,*<br><br>v.<br><br>AMGEN INC.,<br><br>*Defendant.* | Civ. No. 17-1407- CFC, Consol. |
| GENENTECH, INC. and CITY OF HOPE,<br><br>*Plaintiffs,*<br><br>v.<br><br>AMGEN INC.,<br><br>*Defendant.* | Civ. No. 18-924-CFC |

**MEMORANDUM ORDER**

Recent sealed and redacted filings in these related cases make clear that the parties are not giving due regard to the public's right of access to judicial records or the "good cause" standard that governs protective orders under Federal Rule of Civil Procedure 26(c).

In the 18-924 action, for example, Defendant Amgen Inc. filed on March 3, 2020 a sealed stipulated proposed order allowing it to delay the filing of its trial

exhibit list, which had been due that day. Amgen had good reason to request a delay. Its electronic discovery platform for these cases was hosted by Epiq Systems, Inc.; and, as Epiq had publicly announced on March 2nd, Epiq's systems were compromised by a ransomware attack on February 29th, causing Epiq to take its systems offline.[1] Without access to the discovery housed on Epiq's systems, Amgen understandably could not meet the March 3rd deadline. Because of the urgency of the matter, I signed the stipulated order that day without giving thought to its sealed status.

On March 10th, Amgen filed a redacted public version of the stipulated order. That redacted version reads in relevant part:

> WHEREAS, 
>
> WHEREAS, Epiq experienced a complete and total system-wide interruption of all services (the "Epiq outage") beginning the morning of Saturday, February 29, 2020 (see attached Declaration of ▮▮▮▮);
>
> WHEREAS, as a result of the Epiq outage, ▮▮▮▮;
>
> WHEREAS Amgen's Initial Exhibit List (L.R. 16 (3)(6)) is currently due Tuesday, March 3, 3030;

---

[1] https://www.globenewswire.com/news-release/2020/03/02/1993837/0/en/Epiq-Issues-Statement-on-Unauthorized-System-Activity.htm.

> WHEREAS ███████████████████████████
> ██████████████████████████████████;
>
> WHEREAS ███████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██;
>
> NOW THEREFORE, it is hereby stipulated and agreed by the Parties subject to the approval of the Court, that:
>
> Genentech, Inc. and Amgen Inc. hereby stipulate and agree, subject to the approval of the Court, to extend Amgen's deadline for service of its Initial Exhibit List for four full days, measured from the time that ███████
> ██████████████████████████████████
> ████.
>
> \* \* \* \*
>
> Genentech, Inc. and Amgen Inc. hereby further stipulate and agree, subject to the approval of the Court, to meet and confer and seek approval from the Court for further modifications to the Schedule for Pretrial Exchange as needed to address any impact to the other deadlines caused by the Epiq outage.

D.I. 532 at 1–2.[2] Three days later, Amgen filed under seal a stipulated order to delay the trial that had been scheduled for April in the 18-924 case. D.I. 537. That order largely mirrors the first stipulated order. I signed and docketed the second stipulated order but did not seal it. D.I. 539.

It doesn't take a genius to figure out what Amgen redacted in its public version of the first stipulated order—i.e., that Amgen housed its discovery on

---

[2] All citations are to the docket in C.A. No. 18-924 unless otherwise noted.

3

Epiq's systems, that it no longer had access to the discovery, and that it did not know when its access to the discovery would be restored. But the fact that it is obvious to a reader of a redacted filing what has been redacted, does not justify the redactions. And in this case, I am unable to discern a legitimate basis for hiding from the public the fact that Amgen was a victim of the Epiq ransomware attack, especially when that fact is the reason behind a court order to move a trial date. Amgen offered no explanation for sealing the stipulated orders or for the redactions in the public version of the first order it filed. But in any event, Amgen could not reasonably assert that its use of the Epiq system or its inability to access that system as a result of the publicly announced ransomware attack somehow constitutes a trade secret or other proprietary information. Nor could it reasonably argue that public disclosure of the fact that it was a victim of the ransomware attack would cause "a clearly defined and serious injury" that would trump the public's presumptive right of access to this Court's filings. *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019).

The stipulated orders were not the first filings Amgen has made in these cases that shielded from the public eye information that cannot fairly be characterized as proprietary or a trade secret. Plaintiffs Genentech, Inc. and City of Hope (collectively, Genentech) have also made unjustified sealed and redacted filings.

In another March 3rd filing, for example, Genentech redacted dozens of pages of expert testimony from the transcript of a hearing held in open court last October. D.I. 524. The testimony concerned the meaning of certain terms used in the patents asserted in these cases. Typical of the testimony Genentech redacted is the following:

> Q. Now, are you familiar with use of the term fermentation in your field of cell culture technology?
> A. I am familiar.
> Q. And what does it mean in your field?
> A. It has a plain and ordinary meaning, and mainly, if you apply it today, it's mainly the use of cells to produce a product.
>                 * * * *
> Q. In the context of this portion of the Kao patent, the person of ordinary skill in the art would know that the fermentation process referred to there is referring to a mammalian cell culture process; correct?
> A. Yes. As I stated, the term fermentation is very context dependent, so the context here would be, would be cell culture, that's correct.
> Q. In the context of the Kao patent, the word fermentation is used to refer to a mammalian cell culture process for making antibodies; correct?
> A. With the -- if you are speaking to the whole patent and all of the claims, there's also some mention to procaryotic systems as well, but claims we're talking about today would be procaryotic systems, so would be mammalian cell.
> Q. So, correct. Within the context of the Kao patent, the person of ordinary skill would understand the term fermentation to refer to cell culture processes for making antibodies; correct?
> A. Yes. Cell culture process, including for procaryotic, yes.
>                 * * * *

> Q. You would agree within your industry, substituting the word fermentation for mammalian culture processes is becoming more common; correct?
> A. Yes, I think it's – it's fair that that's becoming a, using fermentation synonymous with mammalian cell culture is becoming more common, but, again, I would go back to my original testimony, that, you know, what exactly the boundaries and the scope of what exactly that means. Just broadly, mammalian cell culture, yes. Just want to say fermentation can refer to mammalian cell culture. Yes, I would agree with that.

D.I. 514-1 at 4, 11, 13. Putting aside the fact that this testimony was adduced in open court, there is no reasonable basis to hide from the public the substance of the testimony—industry standards and the meaning of terms in public documents. The testimony reveals nothing about Genentech or Amgen, let alone their trade secrets or proprietary information.

The District Court is not a Star Chamber. We are a public institution in a democratic republic and the public has a presumptive right of access to our filings. That right is founded in the common law and "antedates the Constitution." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986). The public's right of access is not absolute; but it is strongly presumed, and it can be overcome only if a party demonstrates that public disclosure of a filing will result in "a clearly defined and serious injury." *Avandia*, 924 F.3d at 672.

As the conduct of the parties in these cases well illustrates, however, "corporate parties in complex litigation generally prefer to litigate in secret." *Takeda Pharm. U.S.A., Inc. v. Mylan Pharm., Inc.*, No. CV 19-2216-RGA, 2019 WL 6910264, at *1 (D. Del. Dec. 19, 2019). The filings here present the rule, not the exception in my experience. Far too often, I see corporate parties over-designate discovery as confidential, file pleadings and briefs under seal without good cause, and over-redact public versions of sealed filings. And because both sides in the typical complex case want to litigate in secret, neither side serves as a check on the other when it comes to sealed and redacted filings. That leaves it solely to me to protect the public's right of access to the Court's filings.

The problem is that I have neither the expertise nor the time necessary to perform this function in a responsible manner. I lack, for example, the industry knowledge often required to determine if information is truly proprietary and if its disclosure would cause serious injury to a litigant or third party. And given my caseload[3] and the number and size of sealed and redacted filings in those cases, it would be impossible for me to conduct the "document-by-document review" and make the "specific findings on the record concerning the effects of disclosure" that

---

[3] My current caseload, which is typical of the four judges in this district, consists of 563 civil cases, 282 of which are patent cases and 128 of which are Abbreviated New Drug Act cases. I have 43 trials and 32 *Markman* hearings scheduled over the next 12 months.

the Third Circuit requires to justify redactions. *Avandia*, 924 F.3d at 673. In these two cases alone, the parties have made 197 sealed filings, consisting of 1,411 documents and 28,619 pages.

The two parties in these cases, however, appear to have ample resources that can be marshaled to ensure that their filings do not deprive the public of its right of access. Genentech has had 45 attorneys enter their appearance on its behalf in these cases (18 in 18-924 only; 11 in 17-1407 only; 16 in both actions). Amgen has had 42 attorneys enter their appearance on its behalf (18 in 18-924 only; 11 in 17-1407 only; 13 in both actions). There have been 1,199 docket entries in the two actions combined. Since the first action was filed in October 2017, the Court has had to convene 27 hearings, most of which addressed multiple issues. In a particularly memorable hearing, the parties presented 20 lawyers to argue 19 discrete discovery disputes. It is safe to say that the parties are neither lacking in resources nor hesitant to deploy those resources to litigate these cases.

It therefore seems especially appropriate to require these parties to adhere to their filing obligations under the First Amendment, common law, and the Court's rules. To that end, I have decided to appoint pursuant to Federal Rule of Civil Procedure 53(a)(1)(C) Rodney A. Smolla, Dean and Professor of Law at Widener University, as a special master, and to ask and authorize him to determine whether the sealed filings and the redactions in the redacted filings docketed in these cases

comply with Supreme Court and Third Circuit law and the Federal Rules of Civil Procedure. Each party shall be responsible for Dean Smolla's fees incurred for his review of that party's sealed and redacted filings.

Dean Smolla is not a member of the Court's Special Masters Panel, but his experience and reputation as a First Amendment scholar and lawyer make him especially well-suited for this assignment.

To be clear, I recognize the importance of maintaining the confidentiality of trade secrets and proprietary information in civil litigation, especially in patent cases like these actions, where ground-breaking and life-saving drugs and vast sums of money are at issue. I am confident that Dean Smolla shares that perspective. That said, the recent filings discussed above call into doubt whether the parties take seriously their obligation to ensure that their filings comply with the Court's rules, common law, and the Constitution. For that reason, Dean Smolla's appointment is necessary.

WHEREFORE, for the reasons stated above, on this 30th day of March 2020, IT IS HEREBY ORDERED that:

1. Rodney A. Smolla is appointed as Special Master to address whether the sealed and redacted filings in these cases comply with Supreme Court and Third Circuit law and the Federal Rules of Civil Procedure (the "Assigned Duties").

9

2. As required by Rule 53(b)(2) of the Federal Rules of Civil Procedure, Dean Smolla shall proceed with all reasonable diligence and, as provided by Rule 53(c), he shall have the authority to regulate all proceedings and take all measures necessary to address and rule on the Assigned Duties.

3. Dean Smolla shall, after consulting with the parties, establish procedures for the handling of the Assigned Duties. He shall have the duty and authority to require the submission of reports, call conferences, and hold hearings in order to determine the status of issues relating to the Assigned Duties.

4. With respect to hearings and conferences, they shall be held in the Federal Courthouse at 844 King Street or other appropriate place arranged by Dean Smolla or by the parties with the approval of Dean Smolla. If the Courthouse is used, Dean Smolla shall arrange for a courtroom through the Clerk's Office (Beth Mason at 302.573.6170).

5. Absent agreement among the parties, all hearings shall be transcribed by a certified court reporter. Absent an order by Dean Smolla, the parties shall bear equally the costs of the court reporter and transcript.

6. Dean Smolla shall preserve all materials he receives or prepares in connection with any dispute regarding discovery. He shall not be required to file any such materials with the Court unless directed to do so

by the Court, except that the following shall be filed: (1) any transcripts that contain his rulings from the bench; (2) orders entered setting forth his rulings; and (3) any opinions prepared supporting his rulings. All such papers shall be filed with the Court through Dean Smolla and docketed by chambers staff.

7. Dean Smolla shall not communicate *ex parte* with a party without the consent of all parties. He may communicate *ex parte* with the Court.

8. Dean Smolla may have access to trade secrets, proprietary information, or other confidential information in this action including, but not limited to, information which may be subject to a protective order. Dean Smolla and other persons assisting him shall preserve and protect the confidentiality of all such information. If required to file any orders, findings, opinions, or materials that contain or make reference to any such information (including, but not limited to, information designated "Confidential," "For Attorneys Eyes Only" and/or "Sensitive Superconfidential"), he shall file the same under seal.

9. Dean Smola's rulings shall be subject to review by the Court, consistent with Rule 53(f). In this regard, unless otherwise ordered: (a) the parties may serve, file, and docket with the Court specific written objections (and responses thereto) to any of Dean Smolla's rulings; (b) the

objections shall be filed no later than 21 days after being served with a copy of the ruling, and the responses thereto shall be filed within 10 days after being served with a copy of the objections; (c) the objections and responses to the objections are limited to 10 pages each; and (d) the parties must serve, file, and docket with the Court (as well as provide to the undersigned's chambers a courtesy copy of) any relevant portion of the record made before Dean Smolla which pertains specifically to the objections.

10. Dean Smolla shall be compensated for his services at his usual hourly rate. Others assisting him shall be compensated at their usual hourly rates. Dean Smolla shall send statements for services and expenses directly to counsel for the parties on a monthly basis and shall receive payment directly from counsel for the parties in a timely fashion. Each party shall be responsible for Dean Smolla's fees incurred for his review of that party's sealed and redacted filings; otherwise the compensation and expenses of Dean Smolla shall be shared equally by the parties. In this regard, if in Dean Smolla's opinion a party engages in behavior which occasions the waste of his time and resources, or otherwise hinders the efficient resolution of matters before him, that party may be apportioned all or a larger portion of Dean Smolla's compensation, costs,

and expenses. Any objections or disputes as to Dean Smolla's compensation, costs, and/or expenses shall be presented to the Court in a timely application.

_____<br>United States District Judge