# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

_____

| | | |
|---|---|---|
| GENENTECH, INC. and CITY OF HOPE, | ) ) ) | |
| *Plaintiffs*, | ) ) | C.A. No. 17-1407- CFC-SRF (Consolidated) |
| v. | ) ) | |
| AMGEN, INC. | ) ) | |
| *Defendant*. | ) | |
| GENENTECH, INC. and CITY OF HOPE, | ) ) ) | |
| *Plaintiffs*, | ) ) | C.A. No. 18-924-CFC-SRF |
| v. | ) ) | |
| AMGEN, INC. | ) ) | |
| *Defendant*. | ) ) | |

_____

## INTERIM ORDER OF SPECIAL MASTER

Rodney A. Smolla, Special Master

District Court Judge Colm Connolly assigned these consolidated matters to the Special Master in a Memorandum Order entered on March 30, 2020. The District Court's order broadly instructed the Special Master to determine whether the sealed

and redacted filings of the parties comply with the legal principles that govern the sealing of documents filed in federal judicial proceedings as established by the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit, and the Federal Rules of Civil Procedure.

A preliminary hearing on the duties assigned to the Special Master was conducted on the record on April 16, 2020. This Interim Order reflects the agreement of the parties and the Special Master as to how to proceed going forward.

## I.  Briefing and Hearing Schedule

### A.  The Parties Will Initially Self-Review

The parties reached agreement with the Special Master on a process through which the parties themselves would engage in a self-review of the material previously submitted under seal. That review would provide the parties with the opportunity to voluntarily unseal, opening to public view on the docket of the Court, some of the materials previously filed under seal, thereby reducing the volume of remaining sealed material requiring document-by-document review by the Special Master.

### B.  Written Submission Deadlines and Guidelines

#### 1.  June 11 Deadline

By June 11, 2020, the parties shall each submit to the Special Master:

- Index of Sealed Materials.  For each case, an index reflecting the docket number and title of the pleadings (including exhibits) that the party requests continue to be sealed in whole or in part.

- Appendix of Sealed Materials (Highlighted).  An appendix corresponding to the index for each case attaching a copy of the pleadings and materials that the party wishes to be sealed, highlighted in blue[1] to show the party's requested redactions (such copies to be OCR'd if possible so that the Special Master can copy and paste the language in the redactions proposed by the party).  The Index and Appendix should encompass all materials filed under seal up to and including date the materials are submitted to the Special Master, on or before June 11, 2020.

- Legal Brief.  A legal brief (not to exceed 15 pages) providing the legal basis for the sealing request by the party, and any response to this Interim Order.

- Factual Support.  For each item on the index, a party shall provide its basis for the sealing request.  The basis for sealing may be indicated categorically in connection with the index and/or supported by a written discussion of the applicable law to the facts.  Declarations, affidavits, or other factual support

---

[1] The parties have alerted the Special Master that the materials filed with the Court occasionally include yellow or orange highlighting to direct the Court's attention to particular cited information.  The parties will thus use blue highlighting for this redaction review process.

for the sealing requests may be included.  There is no page limit for this portion of the submissions.

- Proposed Procedure for Future Filings. The parties should submit, either separately, or after meeting and conferring, jointly, a proposed procedure for expeditious and efficient review by the Special Master of future filings submitted under seal.  (The parties should meet and confer to determine if there is a process jointly agreed to that will facilitate such expeditious review.)

## 2.    June 26 Deadline

Each party may submit (but is not required to) a paper (not to exceed 10 pages for each case) indicating disagreement or comment upon any sealing requests of the counterparty.

## 3.    Hearing Date

A hearing on the matters pending before the Special Master is shall be held on Monday, June 29, at 1:00 p.m., unless otherwise ordered.

## II.  Applicable Legal Principles

The parties have additionally requested guidance from the Special Master as to the substantive legal principles to be applied in conducting their own "self-review."  This Interim Order sets forth the legal standards to be applied.  In submitting their written submissions and in oral argument the parties remain free to contest these legal principles, in whole or in part, and to present such legal and

evidentiary argumentation regarding their application as the parties deem appropriate.

## A.     The Three Tiers of Review

Three discrete bodies of law govern the principles pertaining to confidentiality, sealing, and redactions of documents in federal court litigation. They apply in ascending orders of scrutiny.

First, there are principles governing the issuance of protective orders in federal litigation. These principles emanate from Rule 26(c) of the Federal Rules of Civil Procedure, and the attendant gloss courts have applied to the application of Rule 26(c). *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783-92 (3d Cir. 1994).

Second, federal courts recognize a common law right of access to judicial records. "The existence of a common law right of access to judicial proceedings and to inspect judicial records is beyond dispute." *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir. 1984). There is a "presumption in favor of access to 'public records and documents, including judicial records and documents.'" *Bank of America National Trust & Savings Association v. Hotel Rittenhouse Associates*, 800 F.2d at 343, *quoting Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).

Third, "the public and the press have a First Amendment right of access to civil trials." *In re Avandia Marketing Sales Practices & Product Liability Litigation*,

924 F.3d 662, 673 (3d Cir. 2019), *citing Publicker*, 733 F.2d at 1070. "[T]he First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings." *Republic of Philippines v. Westinghouse Electric Corporation*, 949 F.2d 653, 659 (3d Cir. 1991), *citing Publicker*, 733 F.2d at 1070. "The First Amendment right of access requires a much higher showing than the common law right to access before a judicial proceeding can be sealed." *In re Cendant Corp.*, 260 F.3d at 198 n. 13. Any restriction on the First Amendment right of public access is "'evaluated under strict scrutiny.'" *Avandia*, 924 F.3d at 673, *quoting PG Publishing Company v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013).

## B.    Protective Orders

Rule 26 of the Federal Rules of Civil Procedure permits the District Court to enter a protective order to shield a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). As the Third Circuit's decision in *Avandia* emphasized, it is worth reciting the standards applicable to motions for protective orders, as a foil against which to contrast the more rigorous standards imposed by the common law and the First Amendment. *Avandia,* 924 F.3d at 673.

Within the Third Circuit, the principles applicable to the issuance of a protective order are governed by the "good cause" factors announced in *Pansy v. Borough of Stroudsburg*, 23 F.3d at 783-92. As Judge Connolly observed in a prior

6

Order in this matter:

> In *Pansy*, the Third Circuit identified eight factors that may be considered in evaluating whether good cause exists: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose; (3) whether disclosure will cause embarrassment to a party; (4) whether the information to be disclosed is important to public health and safety; (5) whether sharing the information among litigants will promote fairness and efficiency; (6) whether the party benefitting from the order is a public entity or official; (7) whether the case involves issues important to the public; and (8) the parties' reliance on the order.

*Genentech, Inc. v. Amgen Inc.*, No. CV 17-1407-CFC, 2019 WL 1349464, at *2 (D. Del. Mar. 26, 2019) (Connolly, J.).

The *Pansy* factors governing the grant of protective orders in the Third Circuit do not constitute a "free pass" to litigants to seek and obtain protective orders on their mere mutual consent or acquiescence.  Protective orders require a showing of "good cause," and "good cause" requires more than the mere coalescence and convenience of the parties. "Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Generalized boilerplate assertions of harm are not sufficient. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 484 (3d Cir. 1995) ("Under *Pansy*, '[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning' do not support a good cause showing.'"), *quoting Cipollone*, 785 F.2d at 1121.

Protective orders entered pursuant to Rule 26(c) are most soundly justified when the documents at issue contain trade secrets or other confidential business information. *See Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 166 (3d Cir. 1993). Yet even trade secrets are not sacrosanct. The "Rules also explain that 'courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure.'" *Id.*, *quoting* Fed. R. Civ. P. 26(c) Advisory Committee's Note to 1970 Amendment.

## C.    The Common Law Right of Access

### 1.    Overview of Right

The United States Supreme Court recognized the common law right of access to judicial records in *Nixon v. Warner Communications, Inc*., 435 U.S. at 597 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents.").

In the Third Circuit, the right is particularly robust. "The right to inspect and copy, sometimes termed the right to access, antedates the Constitution." *United States v. Criden*, 648 F.2d 814, 819 (3d Cir. 1981). Powerful public interests undergird the right. "It has been justified on the ground of the public's right to know, which encompasses public documents generally, and the public's right to open courts, which has particular applicability to judicial records." *Id.*  "The public's

exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *Littlejohn v. Bic Corp*., 851 F.2d 673, 678 (3d Cir. 1988), *citing* 6 J. Wigmore, Evidence § 1834 (J. Chadbourne rev. 1976). "As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud." *Littlejohn*, 851 F.2d at 678. Moreover, "the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.* "[A]ccess to civil proceedings and records promotes 'public respect for the judicial process' and helps assure that judges perform their duties in an honest and informed manner." *In re Cendant Corp*., 260 F.3d at 192, *quoting Leucadia*, 998 F.2d at 161.

## 2.     Defining "Judicial Record"

Given that it is firmly established that the common law presumption of access applies to "judicial records and documents," the case law in the Third Circuit has focused not on the existence of the presumption, but instead on what does or does not qualify as a "judicial record" or "document" within the meaning of the common law right of access.  The unmistakable arc of that case law has been a steady expansion of the records and documents to which the right attaches.

"The common law right of access is not limited to evidence, but rather

encompasses all 'judicial records and documents.'" *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984), *quoting Nixon v. Warner Communications*, 435 U.S. at 597. "It includes 'transcripts, evidence, pleadings, and other materials submitted by litigants." *United States v. Martin*, 746 F.2d at 968, *quoting*, Comment, *All Courts Shall Be Open: The Public's Right to View Judicial Proceedings*, 52 Temple L.Q. 311, 337-38 (1979). The Third Circuit further extended the right to a settlement agreement in *Bank of America*, holding that that the presumption in favor of public access applies not only to all civil trials and records but also to "motions filed in court proceedings." *Bank of America*, 800 F.2d at 343. In *Republic of Philippines v. Westinghouse*, the Third Circuit extended the right to "papers filed in connection with a motion for summary judgment." *Westinghouse*, 949 F.2d at 661. In *Leucadia,* the Third Circuit summarized its extant decisions by observing that, "our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." *Leucadia*, 998 F.2d at 164.

The key to determining whether or not a document or record is subject to the right of access is whether it is properly denominated a "judicial record." *In re Cendant Corp*., 260 F.3d at 192. "The status of a document as a 'judicial record,' in turn, depends on whether a document has been filed with the court, or otherwise

somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id.* "While filing clearly establishes such status, a document may still be construed as a judicial record, absent filing, if a court interprets or enforces the terms of that document, or requires that it be submitted to the court under seal." *Id.*, *citing Enprotech Corp. v. Renda*, 983 F.2d 17, 20 (3d Cir. 1993).

As Judge Andrews for this Court has explained, this divide is especially significant. *In re Application of Ewe Gasspeicher GmbH*, 2020 WL 1272612, at *3 ("For requests to preserve the confidentiality of discovery materials pursuant to a protective order, the Court applies the factors set forth in *Pansy* . . . *See In re Avandia Mktg*., 924 F.3d at 670. When, however, the parties file those discovery materials on the court's docket under seal, they become "judicial records" subject to the more rigorous common law right of access. *Id*. at 672. Finally, the First Amendment right of public access attaches to civil trials. *Id*.").

### 5.    Common Law Access Contrasted with the Rule 26 *Pansy* Factors

The Third Circuit's 2019 decision in *Avandia* strongly emphasized the fundamental divide between the standards that govern the issuance of protective orders under Rule 26 and the standards that govern the presumption of access to judicial records under the common law:

> In short, while the *Pansy* factors may provide useful guidance for courts conducting the balancing required by the common law test, the *Pansy* factors do not displace the common law right of access standard. The difference is not merely semantic—the *Pansy* factors are not

sufficiently robust for assessing the public's right to access judicial records.

*Avandia*, 924 F.3d at 676.

In both substance and procedure, the burdens that must be overcome to justify the sealing of judicial records under the common law are dramatically less pliant than the factors to be weighed under *Pansy* in deciding whether a protective order is warranted. "Unlike the Rule 26 standard, the common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access." *Id.*

As to substance, *Avandia* instructed that in certain critical respects the *Pansy* factors are fundamentally *incompatible* with the Third Circuit's common law right of access jurisprudence. *Id.* ("Moreover, some of the *Pansy* factors are incompatible with our case law on the common law right of access.").

For example, the *Pansy* factors invite a court to consider "'whether disclosure of the information will cause a party embarrassment.'" *Id.*, *citing Glenmede Trust Company v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). In contrast, however, "concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access." *Avandia*, 924 F.3d at 666, *citing Westinghouse*, 949 F.2d at 663. *See also Littlejohn*, 851 F.2d at 685 (reasoning that the proponent of the seal's "desire to preserve corporate reputation" is insufficient to rebut the presumption); *Publicker*, 733 F.2d at 1074

(explaining that public disclosure of poor management is inadequate to justify sealing); *Brown & Williamson Tobacco Corporation v. Federal Trade Commission*, 710 F.2d 1165, 1180 (6th Cir. 1983) (explaining that the desire to shield prejudicial information from competitors and the public is understandable, but "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system.").

So too, *Pansy* permits consideration of "'whether the information is being sought for a legitimate purpose or for an improper purpose.'" *Avandia*, 924 F.3d at 677, *quoting Glenmede*, 56 F.3d at 483. In contrast, a "a person's motive for inspecting or copying judicial records is irrelevant under the common law right of access." *Avandia*, 924 F.3d at 677, *citing Leucadia, Inc.*, 998 F.2d at 167-68; *Bank of America.*, 800 F.2d at 345 ("The applicability and importance of these interests [served by the common law right of access] are not lessened because they are asserted by a private party to advance its own interests.").

The essential substantive command of *Avandia* is that it is error to conflate "the *Pansy* factors with the common law right of access standard." *Avandia*, 924 F.3d at 677. "[T]he *Pansy* factors are not a substitute for the common law right of access standard—which begins with the presumption of access." *Id.* "The scale is tipped at the outset in favor of access." *Id.*

### 6.    The Substantive Common Law *Avandia* Standards

While not purporting to articulate exhaustively what substantive showings will justify sealing or redacting a judicial record and what showings will not, *Avandia* did provide substantial guidance.

*Avandia* rejected as insufficient an eight-year-old declaration previously submitted to support sealing of other documents, instructing that "[o]utdated evidence such as this is insufficient to overcome the presumption of public access." *Id.* at 678.

*Avandia* also rejected as insufficient a second proffered declaration, dismissing that declaration as deficient because it contained mere "broad, vague, and conclusory allegations of harm." *Id.* In rejecting that declaration, the court held that the declarant's assertion that disclosure of the company's "old research strategies 'would still aid competitors in developing research strategies and could be used to harm GSK's relationship with patients and physicians'" was not enough to rebut the presumption of public access, because the declaration lacked any additional explanation as to why revelation of old strategies would harm present commercial relationships. *Id.* at 679. These were the very sort of "blanket assertions of harm" that the *Avandia* court declared "fall short of the clearly defined and serious injury" required for sealing. *Id.*

Finally, *Avandia* sharply disqualified "reputational injury" or mere "embarrassment" as interests sufficient to overcome the presumption of access. On

the record before it, the Court declared that it could not see how the alleged harm "chalks up to anything more than mere embarrassment." *Id.* But "[m]ere embarrassment is insufficient to overcome the strong presumption of public access inherent in the common law right." *Id.*, *citing Publicker*, 733 F.2d at 1074 (explaining that courts generally should not seal evidence of "bad business practice[s]."). In a critical insight, the Court in *Avandia* noted that the values served by public access may be at their apex when the motivation for sealing is embarrassment at what the disclosed material might reveal. "'Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know.'" *Id.*, *quoting Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180.

On the affirmative side of the ledger, *Avandia* confirmed the long-standing truism that the presumption of public access is "'not absolute.'" *Avandia*, 924 F.3d at 672, *quoting Bank of America*, 800 F.2d at 344. The presumption of public access *may* be overcome. The critical divide is the distinction between material containing palpable trade secrets or proprietary business practices that will produce present commercial and competitive harm, on the one hand, and vague, conclusory assertions of commercial or competitive harm, or assertions that in fact appear grounded in reputational interests and embarrassment, on the other. A party's "'vague assertions that the transcript contains secretive business information, and

that disclosure would render [it] at a tactical disadvantage' [are] insufficient to overcome that strong presumption." *Avandia*, 924 F.3d at 676, *quoting LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 221-22 (3d Cir. 2011). The touchstone is the persuasive demonstration of specific, concrete, particularized of harm.

### 7.    The *Avandia* Procedural Requirements

As to procedure, *Avandia* also contemplates a rigorous process of judicial review.  The right of access must not be demoted to "a mere formality."  *Avandia*, 924 F.3d at 676.  To ensure that proper weight is given to "the public's strong interest in the openness of judicial records," a District Court must engage in "a document-by-document review."  *Id*.  Casual, superficial review does not suffice.  "Again, the strong presumption of openness inherent in the common law right of access 'disallows the routine and perfunctory closing of judicial records.'" *Id.*, *citing In re Cendant Corp.*, 260 F.3d at 193-94.

The substantive and procedural standards that must be met to overcome the presumption of access are onerous by definition and design. The party seeking to seal judicial records must satisfy "a heavy burden."  *Miller v. Indiana Hospital*, 16 F.3d 549, 551 (3d Cir. 1994).  The party seeking to have a record sealed "must show that 'the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Avandia*, 924 F.3d at 677-78, *quoting Miller*, 16 F.3d at 55.  In granting a

sealing order, a "District Court should articulate 'the compelling[,] countervailing interests to be protected," make "specific findings on the record concerning the effects of disclosure, and provide[ ] an opportunity for interested third parties to be heard.'" *Avandia*, 924 F.3d at 677-78, *quoting In re Cendant Corp.*, 260 F.3d at 194. "'In delineating the injury to be prevented, specificity is essential.'" *Id.* Generalized incantations that secrecy is required to prevent competitive or commercial harm are not enough to carry the movant's burden. "'Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.'" *Id.*

The factfinding required by district courts must be careful and meticulous in order to vindicate the rights of the public and the integrity of the judicial process itself, notwithstanding the private interests or preferences of the litigants, even when they are in agreement.   "'[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants.'" *Avandia*, 924 F.3d at 677-78, *quoting Leucadia*, 998 F.2d at 167.

The Third Circuit's *Avandia* opinion mandates a "document-by-document" review of the claimed propriety of sealing.  In conducting that review, the Court may sensibly acknowledge that there may be snippets of material that satisfy the onerous burden required to justify sealing.  In such instances, however, only the "snippet" itself may be sealed.  *See In re Petrobras Sec. Litigation*, 393 F. Supp. 3d 376, 387

(S.D.N.Y. 2019) ("Nonetheless, a few of the documents—or, more likely, a few sentences within a few of the documents—may still contain 'business information that might harm a litigant'' competitive standing.' . . . Petrobras has satisfied this Court that some of the sealed documents might still contain snippets of information that even the now much-reorganized Petrobras could reasonably claim were still commercially sensitive.") (internal citations omitted); *Ebert v. C.R. Bard, Inc*., No. CV 12-01253, 2020 WL 429771, at *3 (E.D. Pa. Jan. 28, 2020) ("Although Bard asks for the entirety of the expert reports to be sealed, a less restrictive alternative is available. The Court will instead only permit to be redacted those pages of the expert reports that Bard expressly identified as containing confidential business information in its Motion.").

In a footnote, *Avandia* clarified that the Third Circuit does not "require a district court to provide lengthy, detailed discussion of each individual document." *Avandia*, 924 F.3d at 677, n.11. "Yet it must be clear from the record that the district court engaged in a particularized, deliberate assessment of the standard as it applies to each disputed document." *Id*.

### 8.    The Changed Landscape After *Avandia*

*Avandia* was a game-changer, as District Court opinions applying it in this Circuit have recognized.  *Avandia* struck at the heart of the prevalent practice of collusive secrecy in corporate litigation.  It is a common practice for parties in

corporate cases to file reciprocal unopposed motions to seal, in what often to

amounts to a "I will scratch your secrecy back if you will scratch mine" bargain.

Applying *Avandia*, Judge Andrews observed:

> In my experience, corporate parties in complex litigation generally prefer to litigate in secret. To that end, discovery is over-designated as being confidential, pleadings and briefs are filed under seal, redacted versions of sealed documents are over-redacted, requests are made to seal portions of transcripts of judicial proceedings, and parties want to close the courtroom during testimony. I have tried over the years to reign these tendencies in, but it is difficult because there is usually no one opposing whatever requests are made, and I do not have time to be independently monitoring any of these tendencies unless they are directly requested of me (i.e., requests to close the courtroom and to seal judicial transcripts). I have made some efforts on the requests that are specifically directed to me. I think some of those efforts have resulted in greater exercise of discretion by the parties in asking to have judicial transcripts sealed and in seeking to close the courtroom, but I do not see any impact on any of the other areas of potential abuse.

> In cases like *Avandia*, there is a third party that seeks access to the challenged documents, which is not the case here. The courts of appeals perhaps do not have as much opportunity to instruct on what a trial court should be doing when no party is advocating for openness. Nevertheless, it seems to me that courts should at least address access concerns when they come to the court's attention.

*Takeda Pharmaceuticals U.S.A., Inc. v. Mylan Pharmaceuticals, Inc*., No. CV 19-

2216-RGA, 2019 WL 6910264, at *1 (D. Del. Dec. 19, 2019).

In the wake of *Avandia*, District Courts "must articulate compelling and

countervailing interests to be protected, make specific findings on the record

concerning the effects of disclosure and provide an opportunity for third parties to

be heard." *Ebert v. C.R. Bard, Inc.*, 2020 WL 429771, at *2, *citing Avandia*, 924 F.3d at 672-73.

The District Court's decision applying *Avandia* in *Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, 395 F. Supp. 3d 461, 462 (E.D. Pa. 2019), is instructive. In *Midwest*, both parties had filed motions to seal. Rejecting both motions, the court noted that the "parties make no showing that disclosure of the exhibits contain confidential commercial or proprietary information." *Id*. "Although the parties may agree to shield information contained in discovery materials," the court stated, "they may not do so once those materials become part of the court record." *Id*. "Sealing orders may not be routinely entered without the rigorous analysis required." *Id*. In rejecting the sealing motions, the court held that none of the materials proffered for sealing any confidential material that could cause harm within the meaning of the *Avandia* standard. *Id*.

**D.     The First Amendment Right of Access to Civil Judicial Proceedings**

**1.     Overview**

The Third Circuit has recognized a First Amendment right of access to judicial proceedings in civil cases. *Avandia*, 924 F.3d at 673; *Publicker*, 733 F.2d at 1070; *Delaware Coalition for Open Government, Inc. v. Strine*, 733 F.3d 510, 514 (3d Cir. 2013) ("We have found a right of public access to civil trials, as has every other federal court of appeals to consider the issue."). That much is clear. What is less

clear is the nature of the judicial records to which that First Amendment right attaches in civil cases.

In *Avandia*, the Third Circuit panel invoked the "avoidance doctrine" and decided, by a 2-1 vote, decided not to reach the question of whether the First Amendment right of access applies to judicial records filed in summary judgment proceedings.  Judge Restrepo, concurring in part and dissenting in part, filed an opinion arguing that the "avoidance doctrine" ought not be applied.  Judge Restrepo reached the First Amendment question and opined that the First Amendment right of access did attach to summary judgment findings.  *Avandia*, 924 F.3d at 681-84 (Restrepo, J., concurring in part and dissenting in part).

While the majority in *Avandia* did not decide whether or not the First Amendment right of access applied to the documents before it, the majority did elaborate at some length on the substantive First Amendment standards that would be applicable *if* the First Amendment right were to apply.

The majority in *Avandia* thus declared that "[t]he First Amendment right of access requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." *Id*. at 673, *citing In re Cendant Corp*., 260 F.3d at 198 n.13. "Any restriction on the right of public access 'is . . . evaluated under strict scrutiny.'" *Avandia*, 924 F.3d at 673, *citing PG Publishing Co*., 705 F.3d at 104. "If the First Amendment right of access applies, "there is a presumption that

21

the proceedings will be open to the public." *Avandia*, 924 F.3d at 673, *citing*

*Publicker*, 733 F.2d at 1073. The party seeking closure may rebut the presumption

of openness only if it is able to demonstrate "an overriding interest [in excluding the

public] based on findings that closure is essential to preserve higher values and is

narrowly tailored to serve that interest." *Avandia*, 924 F.3d at 673, *citing Publicker*,

733 F.2d at 1070 (explaining that "to limit the public's access to civil trials there

must be a showing that the denial serves an important governmental interest and that

there is no less restrictive way to serve that governmental interest.").

    *Avandia* further instructed that in determining whether a First Amendment

right of access applies to judicial records such as those filed in summary judgment

proceedings, courts must apply the two-prong "experience and logic" test that has

been adopted across the landscape of First Amendment jurisprudence to decide

access questions.  *Avandia*, 924 F.3d at 673.

    A proceeding qualifies for the First Amendment right of public access when

"there has been a tradition of accessibility" to that kind of proceeding, and when

"access plays a significant positive role in the functioning of the particular process

in question." *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 10, (1986).  "In

order to qualify for public access, both experience and logic must counsel in favor

of opening the proceeding to the public."  *Delaware Coalition*, 733 F.3d at 514.

    In *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988), the

Fourth Circuit, citing the Third Circuit's holding in *Publicker*, held that "the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case." *Id.* at 253, *See Publicker*, 733 F.2d at 1067-71. The Second Circuit, finding *Rushford* persuasive, adopted the same position in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Among other rationales, the Second Circuit reasoned that when a First Amendment right of access attaches to a judicial proceeding itself, the norm should be that the right also attaches to documents filed in those proceedings, observing that "'[o]ther circuits that have addressed [the] question have construed the constitutional right of access to apply to written documents submitted in connection with judicial proceedings that themselves implicate the right of access.'" *Id.*, *quoting Matter of New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987), *citing In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986); *Associated Press v. United States District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983).

The "avoidance doctrine" is a permissive and prudential principle of judicial restraint. The doctrine embraces the proposition that "a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available." *Hagans v. Lavine*, 415 U.S. 528, 547 (1974). In *Avandia*, the majority found the common law presumption of access "dispositive," and therefore declined to rule on the First Amendment question. *Avandia*, 924 F.3d at 680. As already

noted, Judge Retrespo was not convinced that the common law analysis was dispositive and went on to reach the First Amendment question. *Id*. at 681-84 (Restrepo, J., concurring in part and dissenting in part).

As a practical matter, it likely that the question of whether the First Amendment right of access does or does not apply to any of the sealings and redactions in these consolidated matters will never need to be reached. The First Amendment question would only come into play if the Special Master were to conclude that a particular sealing or redaction was justifiably kept from public view under the common law *Avandia* standard, but arguably might *not* justifiably be sealed or redacted under the First Amendment. In this unlikely circumstance, the Special Master would provide advance warning to the parties and permit written and oral argumentation on the First Amendment question as to the specific redaction, both as to law and fact.

## 2. Materials in the Public Domain

As a final legal observation, the sealing of material already in the public domain is particularly difficult to justify, under either common law or First Amendment principles. Indeed, one rare instance in which First Amendment principles might require sealing even if the common law sealing standard were otherwise satisfied would be an attempt to seal material previously made public on a judicial docket, especially the docket in this very Court. "Secrecy is fine at the

discovery stage, before the material enters the judicial record." *Baxter International*, 297 F.3d at 545, *citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).  But once the cat is out of the bag, it cannot be put back in the bag.  *See SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (Posner, Circuit Judge, sitting by designation) ("but there the cat is out of the bag, so there is no need for the settling parties to submit an amended redacted version.").

After material appears unsealed on a court's docket, and therefore in the public domain, there are little, if any, plausible justifications for subsequently sealing the same material.  *The Gillette Company v. Dollar Shave Club, Inc*., No. 15-1158-LPS-CJB, D.I. 511, Slip Op. at 4 (D. Del. Sept. 6, 2017)  (noting that some material the parties sought to seal was already unsealed in other submissions). "Once material is in the public domain on the public dockets of courts, there is little sound justification for sealing subsequent filings containing the same public domain material." *Milhouse v. Heath*, No. 1:14-CV-01844, 2016 WL 9184416, at *1 (M.D. Pa. Sept. 7, 2016).  "The Court can conceive of no justification to seal an opinion that is readily available in the public domain."  *Sparman v. Edwards*, 325 F. Supp. 3d 317, 319 (E.D.N.Y. 2018).

These principles have particular force in the modern world of electronic filing and judicial dockets openly accessible to the public on government and private databases.  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("But

25

however confidential it may have been beforehand, subsequent to publication it was confidential no longer. It now resides on the highly accessible databases."). *See also American Civil Liberties Union of Mississippi v. Fordice*, 969 F. Supp. 403, 411 (S.D. Miss. 1994) ("Regarding documents which are in the public domain, if a file contains only material which has already been made public, the Court finds that such files should remain completely open and unredacted."); *aff'd sub nom. American Civil Liberties Union of Mississippi, Inc. v. King*, 84 F.3d 784 (5th Cir. 1996); *Performance Chevrolet, Inc. v. ADP Dealer Services, Inc*., No. 2:14-CV-2738 TLN AC, 2015 WL 13855488, at *1 (E.D. Cal. Feb. 27, 2015) ("Defendant has identified no rule, statute, case or other authority requiring that the document it filed must be sealed or redacted after the fact. To the contrary, the cases addressing this issue have denied requests to seal documents where they were already publicly filed, or where the information contained in the documents is already in the public domain.") *citing Level 3 Communications, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572 (E.D. Va. 2009); *Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 2012 WL 234396, at *2 (C.D. Cal. 2012); *Cooke v. Town of Colorado City, Ariz.*, 2013 WL 3155411, at *2 (D. Ariz. 2013); *Apple, Inc. v. Samsung Electronics Co.*, Ltd., 2014 WL 722489, at *1 (N.D. Cal.2014).

So ordered.

April 24, 2020                                    /s/ Rodney A. Smolla
                                                  Special Master